Filed 4/18/13  In re Ronin D. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

---

| | |
|---|---|
| In re RONIN D., a Person Coming Under the Juvenile Court Law. | |
| AMANDA D., | C072206 |
| Petitioner and Respondent, | (Super. Ct. No. SAD0003019) |
| v. | |
| ALICIA O., | |
| Objector and Appellant. | |

Alicia O., the mother of three-year-old Ronin D., appeals from an order of the Placer County Superior Court freeing Ronin from her custody and control and terminating her parental rights.  (Fam. Code,[1] § 7822, subd. (a)(3).)  The court found that mother, with intent to abandon Ronin, had left him in the care and custody of his father, James D., for more than a year while maintaining only token communication with Ronin and providing him only token and de minimis support.  (*Ibid*.)

---

[1] Further statutory references are to the Family Code unless otherwise indicated.

1

On appeal, mother contends (1) the trial court failed to consider whether Ronin's interests required the appointment of independent counsel, and (2) the court failed to read and consider the investigation report. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Mother and father met at a 12-step program and moved in together. Within a few months, he suspected that she had resumed using drugs. Mother moved out of their shared residence, but she returned when father learned that she was pregnant with Ronin. They lived together with a single father, Patrick F., and his young daughter.

Ronin was born in June 2009. Father again suspected that mother was using drugs, and he again asked her to leave. In August 2009, when Ronin was about two months old, mother left Ronin with father. She moved, first, to the residence of some friends; and then to the residence of her parents. That same month, father filed in family law court for sole legal and physical custody of Ronin.

For a few months after mother and father separated, she babysat Ronin at his residence while father was at work. Mother brought no food or baby supplies for the child. Mother proved to be unreliable; items, including Patrick F.'s prescription medication, were missing after mother's visits. In October 2009, after mother failed a drug test and failed to attend co-parenting classes and mediation, the family law court granted father's request for sole legal and physical custody of Ronin.

The family law court awarded mother generous visitation rights with Ronin while she was undergoing rehabilitation for drugs. In July 2010, after mother spent months going in and out of rehabilitation programs and jail, the family law court reduced mother's visitation to one supervised three-hour visit per week. Following the court's order, the maternal grandparents had two visits with Ronin in September 2010, but mother did not attend. Mother had just two one-hour visits with Ronin, on October 3, 2010, and on December 9, 2010. Thereafter, mother did not request another visit. She

2

telephoned the visitation monitoring agency and left a message stating she would call again, but she did not do so. Ronin was 18 months old when he last saw mother.

Ronin has lived with father since birth. After mother's last visit with Ronin in December 2010, father allowed the maternal grandparents to visit Ronin because he wanted the child to have a relationship with his grandparents.

Father met petitioner Amanda D. in late 2009. She visited with Ronin during her visits with father. Amanda began residing with father and Ronin when Ronin was 10 months old. From that point on, Amanda has acted as Ronin's mother, doing all the things mothers do for their children such as feeding him, bathing him, and reading stories to him. Amanda and father married in January 2011 and, several months later, gave Ronin a half brother, Rayden. Ronin loves Rayden. Amanda decided to adopt Ronin because she wanted to ensure that Ronin would remain with her and Rayden if anything were to happen to father.

In March 2012, Amanda filed a petition for stepparent adoption of Ronin. She also filed a petition to declare Ronin free from mother's custody and control pursuant to sections 7822 and 7825.

Shortly thereafter, the maternal grandparents sought to join the family court proceedings and sought to increase their visitation with Ronin. The grandparents' action was stayed pending the resolution of the petition to terminate mother's parental rights.

Lori Coopwood of Quest Intelligence Group conducted an investigation for the stepparent adoption. (§ 7850.) Coopwood reviewed the parties' criminal records, reviewed the social worker's adoption investigation report, and interviewed father and Amanda. Coopwood talked with Ronin, but she did not formally interview him because of his age of slightly less than three years. Coopwood attempted to contact mother at the telephone number she provided to the court, which belonged to the maternal grandmother. Coopwood spoke briefly to the grandmother who promised to forward the message to mother. But at trial, the maternal grandmother acknowledged she did not

3

forward the message as promised because she believed Coopwood was working for father, rather than the court, and the grandmother "did not want to put [mother] through anymore stuff." Coopwood recommended that the petition to free Ronin from mother's custody and control be granted. Her report was filed May 31, 2012.

A hearing on the petition was held on June 1, 2012. The maternal grandfather attended but mother did not attend. The grandfather told the court that mother wanted to contest the petition. A court trial was set for June 12, 2012. On that date, the court appointed counsel for mother and set a contested hearing for July 3, 2012. The case was continued at the request of mother's counsel.

The trial began on July 31, 2012, and continued on August 14, 2012. Amanda testified at trial and she presented testimony from father, former roommate Patrick F., the paternal grandmother, and the custodian of records for the agency that supervised mother's visitation.

Mother testified and she presented testimony from the maternal grandparents, the maternal great aunt, and a friend. The trial court accepted Amanda's exhibits including the Coopwood report.

After the case was submitted for decision, this exchange occurred:

"THE COURT: Return the exhibits at the time of the ruling.

"[COUNSEL FOR AMANDA]: Okay. *I believe that all of my exhibits are in*.

"THE COURT: *Correct*. But I just want to stipulate at the time of the ruling I can return all those." (Italics added.)

In its oral ruling, the trial court found by clear and convincing evidence that Amanda had satisfied the elements of section 7822: one, mother left Ronin in father's care and custody; two, mother failed to support or communicate with Ronin for a period of one year; and three, mother intended to abandon Ronin. The court found that the testimony of the maternal grandmother and maternal great aunt was "not credible" and that "they flat-out lied" about mother's contacts with the child and the grandparents. In

4

contrast, the court found that Amanda's testimony was "very powerful" on the issues of frequency of visits and telephone contacts. After discussing the evidence supporting each statutory element, the court concluded; "Based on all the above, the Court finds [Amanda] has clearly met her burden by clear and convincing evidence that the mother intended to abandon her child until she got her life back in order. Unfortunately for her, she took many sidesteps along the way and delayed her reunification until after the statutory time period had elapsed. Grandparents' intention to maintain contact with this child cannot bolster mother's case."

## DISCUSSION

### I

Mother contends the trial court erred when it failed to comply with its statutory duty to consider whether Ronin's interests required the appointment of counsel and consequently failed to appoint counsel for Ronin. We disagree.

A parent has standing to assert her child's right to independent counsel. (*In re Noreen G.* (2010) 181 Cal.App.4th 1359, 1377-1378.)

Section 7860 provides in relevant part that, "[a]t the beginning of the proceeding on a petition filed pursuant to this part, counsel shall be appointed as provided in this article."

Section 7861, pertaining to counsel for the child, states: "The court shall consider whether the interests of the child require the appointment of counsel. If the court finds that the interests of the child require representation by counsel, the court shall appoint counsel to represent the child, whether or not the child is able to afford counsel. The child shall not be present in court unless the child so requests or the court so orders."

"A proceeding to free a child from parental custody and control is essentially accusatory in nature, directed to challenges against the parent -- not against the child. [Citation.] The petitioner must establish that a parent is guilty of abandoning, cruelly treating or neglecting the child; or is addicted, morally depraved; or is a convicted felon,

5

is mentally deficient, or is otherwise incapable of caring for the child.  [Citation.]  Thus, the issue at a hearing is whether a parent is fit to raise the child.  To that end are directed all the arguments of opposing parties, parents claiming they are fit and petitioners claiming otherwise, and with each side generally contending it is protecting the best interests of the child.  *It is thus likely that in a particular case the court will be fully advised of matters affecting the minor's best interests, and little assistance may be expected from independent counsel for the minor in furtherance of his client's or the court's interests.*  However, when the court finds a child has separate interests not protected in the contest between parents and a petitioner, the court must exercise its discretion by appointing separate counsel."  (*In re Richard E*. (1978) 21 Cal.3d 349, 354 (*Richard E.*), italics added.)

Although, as a general proposition, independent counsel likely will be of little assistance, the *trial court* must consider whether this is so in the particular case.  Thus, independent counsel must "be appointed at the commencement of proceedings *absent an immediate showing* upon which the court can exercise its discretion *against making an appointment.*"  (*Richard E., supra*, 21 Cal.3d at p. 355.)

In this case, the trial court appointed counsel for mother on June 12, 2012, but it did not appoint separate counsel for Ronin.  The minute order for that date does not indicate what the parties requested or argued; nor does it indicate what the trial court considered in the course of appointing counsel for mother but not for Ronin.  The reporter's transcript commences with subsequent proceedings on July 31, 2012.

" '[I]n the face of a silent record, we … apply the established principle that "official duty has been regularly performed" (Evid. Code, § 664) . . . .' "  (*Saraswati v. County of San Diego* (2011) 202 Cal.App.4th 917, 929.)  Where, as here, the appellate court is not furnished a transcript for the date the trial court would have considered the appointment of independent counsel, the court is "justified in relying on the presumption

6

that official duty was regularly performed." (*In re Helen J.* (1973) 31 Cal.App.3d 238, 243 (*Helen J.*).)

Mother claims this case is not like *Helen J.,* "where the appellant has failed to provide a complete record. [Citation.] Here, no oral record of the initial proceedings is available. [Citation.]" But *Helen J.* does not purport to limit the Evidence Code presumption to cases in which the record's silence is attributable to the action or omission of a party. Mother's argument would needlessly jeopardize official actions whenever the record is silent for reasons beyond the parties' control.

The *Helen J.* court noted that the "chance that any of the five children, whose maximum age was eight[,] would have retained private counsel seems miniscule." (*Helen J, supra,* 31 Cal.App.3d at pp. 242-243.) Mother claims private counsel was necessary for Ronin, who was under age three, because Ronin had spent almost half of his first year with mother; Ronin remembered that mother was his "mommy"; Ronin was capable of being interviewed even though the investigator had not done so; and Ronin could have been "asked and definitively answered" the "question of whether or not mother had maintained regular contact by phone with him . . . ." None of these points has merit.

Nothing in the record suggests that counsels for Amanda and mother were incapable of fully advising the trial court as to whether, or how, Ronin's contacts with "mommy" during the first year of his life affected his best interests. (*Richard E., supra,* 21 Cal.3d at p. 354.) Although Ronin was capable of "identify[ing]" Amanda, Rayden, and various objects in his bedroom, nothing in the record suggests the young child was capable of a meaningful or "definitive" interview about his telephone contacts with mother. Even if Ronin was capable of discussing telephone contacts, an acknowledgment by Ronin that mother had maintained regular contact would not have assisted her. As the trial court explained, the family court had not authorized telephone contact and all in-person contact had to be supervised by an agency. At most, an interview with Ronin

7

would have demonstrated that mother had not adhered to the family court's visitation order.

As in *Richard E.*, it appears the trial court had before it all factual matters that might have persuaded it that Ronin's interests would best be served by not depriving mother of custody. (*Richard E., supra,* 21 Cal.3d at p. 356.) Under these circumstances, no miscarriage of justice could have resulted from the court's failure to exercise its discretion to appoint counsel for Ronin. (*Ibid*.)

Mother's reliance on *Neumann v. Meglar* (2004) 121 Cal.App.4th 152 (*Neumann*) is misplaced. *Neumann* reversed an order terminating parental rights where the appellate court had a full transcript of the trial court proceedings and the transcript did not contain any showing on the issue of need for independent counsel for the children. (*Id*. at pp. 170-171.) The court concluded, "[b]ased on the record before us, the trial court did not undertake this consideration." (*Id*. at p. 171.) *Neumann* is distinguishable because the record in the present case does not include a reporter's transcript of the hearing at which counsel was appointed for mother but not for Ronin. Absent an adequate record, the presumption that official duty was regularly performed must prevail.

## II

Mother contends the trial court erred when it failed to comply with its statutory duty to read and consider the investigation report. The record does not support mother's argument.

Section 7850 provides that, upon the filing of a petition to declare a child free from parental custody and control, the "juvenile probation officer, qualified court investigator, licensed clinical social worker, licensed marriage and family therapist, or the county department . . . shall immediately investigate the circumstances of the child and the circumstances which are alleged to bring the child within any of the [alleged statutory] provisions . . . ." Section 7851 requires the person or agency conducting the investigation to "render to the court a written report of the investigation with a

8

recommendation of the proper disposition to be made in the proceeding in the best interest of the child." (§ 7851, subd. (a).) Section 7851, subdivision (d), provides that "[t]he court shall receive the report in evidence and shall read and consider its contents in rendering the court's judgment." The court has a duty to "read and consider the report sua sponte." (*Neumann, supra*, 121 Cal.App.4th at p. 169.)

In this case, Lori Coopwood of Quest Intelligence Group conducted the investigation and rendered the requisite report to the court. During trial, Amanda's counsel introduced the Coopwood report as petitioner's exhibit 13. As mother notes in her reply brief, the reporter's transcript of the introduction of the report states that "Exhibit No. 13 was marked for identification." Mother argues "nowhere does the record reflect that Exhibit 13, or any other exhibit for that matter, was ever *admitted* into evidence." Mother overlooks the trial court's exchange with Amanda's counsel in which she voiced her belief that all her exhibits were "in" evidence and the court said counsel was "correct." Mother's argument has no merit.

Following the trial court's oral ruling, the court signed a formal "Order and Judgment to Declare Minor Free from Parental Custody and Control" that had been prepared by Amanda's counsel. The order indicates in relevant part that the court "*examined* the parties, and *evidence*, both oral *and documentary*, [that had] been introduced . . . ." (Italics added.) After examining the evidence, the court found in relevant part that "The court-appointed investigator, Lori Coopwood with Quest Intelligence Group, has filed a written report of her investigation of the circumstances of the child as required by Family Code Section 7851, in which she recommends that Ronin . . . be declared free from the custody and control of Alicia . . . ."

Mother claims this order "does not reflect that the trial court read and considered the report." But she overlooks the notation that the court *examined* the *documentary evidence,* which includes the report, and she makes no claim that the court somehow "examined" the report without "read[ing] and consider[ing] it." (§ 7851, subd. (d).)

9

Mother's claim that the court failed to fulfill its duty to read and consider the report has no merit.

## DISPOSITION

The order freeing Ronin D. from parental custody and control is affirmed.


                                          \_\_\_\_\_BLEASE_____, J.


We concur:


\_\_\_\_RAYE_____, P. J.


\_\_\_\_BUTZ_____, J.